ANTONIA M. APPS
REGIONAL DIRECTOR
Sheldon L. Pollock
Celeste Chase
Jeremy Brandt (pending admission *pro hac vice*)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
(212) 336-0194 (Brandt)
brandtje@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>　　-against-<br><br>BARRY SIEGEL,<br><br>　　　　　　　Defendant. | COMPLAINT<br><br>24 Civ. _____ (   )<br><br>JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Barry Siegel ("Defendant" or "Siegel"), alleges as follows:

## SUMMARY

1.　　This case involves unlawful insider trading by Siegel in the securities of Foot Locker, Inc. ("Foot Locker"), a publicly traded clothing and footwear retailer. On May 17, 2023, Siegel, who was then employed by Foot Locker as Senior Director of Order Planning Management, North America, sold short Foot Locker common stock in advance of the company's first quarter 2023 earnings announcement on May 19, 2023. After the announcement, Foot Locker's stock price fell by 27.24%, and Siegel bought Foot Locker stock to cover his short position, profiting by $82,736.06.

2. On August 18, 2023, about a week after he was laid off from his job at Foot Locker, Siegel again sold short Foot Locker common stock, this time in advance of the company's announcement of its second quarter 2023 earnings on August 23, 2023. After that announcement, Foot Locker's stock price fell by 28.28%, and Siegel bought Foot Locker stock to cover his short position, profiting by $30,132.89.

3. Before each of his short sales, Siegel was in possession of material nonpublic information concerning Foot Locker's operating results, including negative sales and inventory figures. Siegel was subject to Foot Locker's Code of Business Conduct, which included a prohibition against trading while in possession of material nonpublic information both during and after employment at Foot Locker. Siegel, nonetheless, traded based on this material nonpublic information and reaped profits totaling $112,868.95.

**VIOLATIONS**

4. By virtue of the foregoing conduct and as alleged further herein, Siegel has violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

5. Unless Siegel is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

6. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Section 20(b) [15 U.S.C. §§ 77t(b)] and Exchange Act Section 21A(a) [15 U.S.C. § 78u-1(a)].

7. The Commission seeks a final judgment: (a) permanently enjoining Defendant from

violating the federal securities laws and rule this Complaint alleges he has violated; (b) ordering Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendant to pay civil money penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and (d) permanently prohibiting Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)].

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

9. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendant may be found in, is an inhabitant of, or transacts business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including that Foot Locker's corporate headquarters, where Defendant worked, is within the District. Furthermore, Defendant lives in this District.

## DEFENDANT

11. **Siegel**, age 56, resides in New York, New York. Defendant Siegel was employed by Foot Locker from 1998 to 2006, and again from 2011 to 2023. His most recent title at Foot Locker

was the Senior Director of Order Planning Management, North America. Siegel's employment at Foot Locker was terminated on August 9, 2023, amid a round of corporate layoffs.

## OTHER RELEVANT ENTITY

12. **Foot Locker**, a New York corporation headquartered in New York, New York, is a leading footwear and apparel retailer. Foot Locker's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act, and its common stock is listed and trades on the New York Stock Exchange under the ticker symbol "FL." As of February 3, 2024, Foot Locker operated 2,523 stores in 26 countries.

## FACTS

**I. Defendant Acknowledged Foot Locker's Prohibition Against Insider Trading.**

13. From approximately January 2021 to August 9, 2023, Siegel was employed by Foot Locker as Senior Director of Order Planning Management, North America. In that role, Siegel's job duties included working with buyers and planners within the company to increase allocation of inventory to one of Foot Locker's distribution centers with the goal of cutting the company's logistical expenses.

14. As a Foot Locker employee, Siegel was required to acknowledge reading and understanding the company's Code of Business Conduct on an annual basis.

15. Foot Locker's Code of Business Conduct referenced the company's Policy Prohibiting Insider Trading, a separate document which prohibited trading in the securities of an issuer while in possession of material nonpublic information. According to Foot Locker's Policy Prohibiting Insider Trading, the prohibition continued to apply after separation from the company as long as the former employee was in possession of material nonpublic information.

16. Annually and as late as approximately April 29, 2022, Siegel acknowledged having read and understood the Code of Business Conduct through an online question-and-answer format.

4

He answered "Yes" to the question "I hereby certify that I have read and fully understand the Code of Business Conduct," and he answered "No" to the question "Are you allowed to trade in Foot Locker's stock if you have material, nonpublic information (for example, quarterly earnings) before the Company announces the information?"

## II.   Defendant Accessed Foot Locker's Material Nonpublic Information.

17.   To fulfill his job duties, Siegel was granted access to reports that detailed the company's sales and inventory data, including comparisons to prior periods and to the company's forecasts. These reports were available to Siegel via a Foot Locker internal database.

18.   Foot Locker tracked employee usage of the database. Siegel frequently accessed the database and ran and viewed reports that displayed sales and inventory data in real time, as well as comparisons between the current year, prior year, and Foot Locker's financial forecasts for both sales and inventory. Siegel utilized that data to fulfill his job duties.

19.   Siegel last accessed the Foot Locker database on or about August 8, 2023.

20.   On or about August 9, 2023, Foot Locker terminated Siegel's employment amid a round of corporate layoffs.

## III.   Foot Locker Announced Declining Financial Performance in the First Two Quarters of 2023.

21.   When Foot Locker announced earnings for the first and second quarters of 2023, it made public the sales and inventory data that were available to Siegel through the Foot Locker database prior to these announcements.

22.   Foot Locker announced its financial results for the first quarter of 2023 on May 19, 2023. In the press release accompanying the announcement, Foot Locker's President and CEO said, "our sales have since softened meaningfully given the tough macroeconomic backdrop, causing us to reduce our guidance for the year as we take more aggressive markdowns to both drive demand and manage inventory." The announcement stated that as of April 29, 2023, the company's sales

decreased by 11.4 percent and merchandise inventories totaled $1,758 million, 25% higher than at the end of the first quarter of 2022.

23. While Siegel had access to sales and inventory information from this reporting period in his role at Foot Locker, that information was not made public until the May 19, 2023, announcement.

24. Between market close on May 18 and market close on May 19, Foot Locker's stock price fell from $41.52 to $30.21 per share, a decrease of 27.24%.

25. Foot Locker announced its financial results for the second quarter of 2023 on August 23, 2023. The announcement stated that as of July 29, 2023, the company's sales had decreased by 9.9% and merchandise inventories stood at $1.8 billion, 11% higher than at the end of the second quarter of 2022.

26. While Siegel had access to sales and inventory information from this reporting period in his role at Foot Locker, that information was not made public until the August 23, 2023, announcement.

27. Between market close on August 22 and market close on August 23, Foot Locker's stock price fell from $23.20 to $16.64 per share, a decrease of 28.28%.

**IV.   Defendant Sold Short Foot Locker Stock Before Two Quarterly Announcements.**

28. On or about May 17, 2023, at approximately 1:28 p.m., Siegel sold short 8,000 shares of Foot Locker stock.[1]

29. On or about May 19, 2023, prior to the market opening, Foot Locker announced earnings. At approximately 9:31 a.m. on the same day, Siegel bought Foot Locker stock to cover his short position for a profit of $82,736.06.

---

[1]   All times are shown in Eastern Time.

6

30. On or about August 18, 2023, at approximately 3:28 p.m.—about a week after Foot Locker had laid Siegel off—Siegel sold short 3,000 shares of Foot Locker stock.

31. On or about August 23, 2023, prior to the market opening, Foot Locker announced earnings. At approximately 9:36 a.m. on the same day, Siegel bought Foot Locker stock to cover his short position for a profit of $30,132.89.

32. The table below shows Siegel's profits from his May and August trades in Foot Locker stock while he was in possession of material nonpublic information.

| Opened | Closed | Shares | Price to sell short | Short sale price/share | Price to buy to cover | Cover price/share | Profit/loss |
|---|---|---|---|---|---|---|---|
| 5/17/2023 | 5/19/2023 | 8,000 | $328,212.11 | $41.03 | ($245,476.05) | $30.68 | $82,736.06 |
| 8/18/2023 | 8/23/2023 | 3,000 | $76,169.39 | $25.39 | ($46,036.50) | $15.35 | $30,132.89 |
|  |  |  |  |  |  |  | $112,868.95 |

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)

33. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 32.

34. Defendant, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently has engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

35. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

36. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 32.

37. Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

38. By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)] and Exchange Act Sections 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

**II.**

Ordering Defendant to disgorge all ill-gotten gains he received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

**III.**

Ordering Defendant to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1];

**IV.**

Permanently prohibiting Defendant from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and

**V.**

Granting any other and further relief this Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury.

Dated: New York, New York
September 24, 2024

/s/ Antonia M. Apps
ANTONIA M. APPS
REGIONAL DIRECTOR
Sheldon L. Pollock
Celeste Chase
Jeremy Brandt (pending admission *pro hac vice*)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
(212) 336-0194 (Brandt)
brandtje@sec.gov